UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Broward County Division)

| | |
|---|---|
| BOBBY SAVAGE, | ) |
| | ) |
| Plaintiff, | ) CASE NO: |
| | ) |
| v. | ) |
| | ) |
| SOUTH FLORIDA REGIONAL | ) |
| TRANSPORTATION AUTHORITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## COMPLAINT

The Plaintiff, BOBBY SAVAGE, brings this Complaint against the Defendant, SOUTH FLORIDA REGIONAL TRANSPORTATION AUTHORITY, (hereinafter "SFRTA"), for discrimination under the American's with Disabilities Act, 42 U.S.C. §§ 12131-12165 (Title II) and states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. Sections 1331 and 1343. This civil action arises under the Constitution and Laws of the United States. Plaintiff is alleging a violation of his rights under the American's with Disabilities Act, 42 U.S. C. §§ 12131-12165 (Title II).

2. Venue is proper under 28 U.S.C. Section 1391(b) and 42 U.S.C. §§ 12111, et. seq. This claim arose in all material respects within the State of Florida and County of Broward on public rail transportation system known as TRI-RAIL, that is operated, managed and controlled by SFRTA.

3 Most of the acts complained of occurred on that portion of the TRI-RAIL that was being

operated in Broward County, Florida. Some of the acts complained of occurred in Palm Beach County, Florida, but all disable riders of TRI-RAIL in Miami-Dade, Broward, and Palm Beach County, Florida are affected by the discriminatory actions of the Defendant SFRTA.

4. At all times relevant Plaintiff BOBBY SAVAGE is a resident of Broward County, Florida.

5. At all times relevant, SFRTA has maintained its principal office at 800 N.W. 33rd Street, Pompano Beach, Florida 33064

## PARTIES

6. Plaintiff, BOBBY SAVAGE, hereinafter referred to as Plaintiff or "SAVAGE", is a qualified individual with a disability as provided in Section 12131(2) of the American's with Disabilities Act; specifically, he is legally blind, and

7. At all times material herein, Defendant, SFRTA, and in particular, TRI-RAIL, is a public entity within the meaning of Section 12131(1)(A) and (B) of the American's with Disabilities Act as it is a department, agency, special purpose district, or other instrumentality of the State of Florida or local governments of this state or is a commuter authority (as defined in section 24102(4) of title 49).

## CLAIM FOR RELIEF

## COUNT I – TITLE II OF THE AMERICAN'S WITH DISABILITIES ACT

8. At all time material to this action, the Plaintiff, BOBBY SAVAGE, is legally blind and must rely on public transportation or the generosity of others to travel around South Florida.

9.  BOBBY SAVAGE is a qualified individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

10. The Defendant SFRTA claims in all of its brochures, advertisements and on its web site that it complies with the American's with Disabilities Act.

11. The Defendant SFRTA claims that "All TRI-RAIL trains and stations are accessible to persons with disabilities."

12. The Defendant SFRTA claims that "Persons with disabilities ride on TRI-RAIL Trains at a discount rate."

13. Defendant SFRTA states in its brochures and publications that "Tickets are NOT sold onboard the trains."

14. Because SFRTA has a policy and procedure that it does not sell tickets onboard trains, it claims that "Persons with disabilities have different options to purchase tickets. The options include:

- Upon arrival at the station through ticket vending machines (TVMs);
- At the TRI-RAIL Kiosk [but it notes that (not all Tri-Rail stations are staffed with Station Agents)  The Station Agents are available at West Palm Beach, Pompano Beach, Ft. Lauderdale Airport, Metrorail Transfer and Miami Airport Stations];
- Persons who cannot purchase tickets through the TVM have the option of purchasing tickets in advance;
- If tickets were not purchased in advance, AND you cannot purchase tickets through the TVMs, persons with disabilities can request a self-addressed envelope from onboard security personnel, in order to mail payment after their trip.

15. At all times material Defendant SFRTA knew or in the exercise of reasonable care should know that because it does not sell tickets on board the TRI-TRAIL Train, that blind persons who decide on an occasion or randomly to ride the TRI-RAIL Train, may have to board the Train with out a ticket if they cannot purchase a ticket through the TVM.

16. In fact in its written policy it knows that such an event may occur, especially at stations where there are no Station Agents to assist and as a result the Defendant has the duty to see that its employees and agents and in particular supervisors are trained on how to accommodate a disabled rider.

17. On April 6, 2011 such an event occurred involving Plaintiff BOBBY SAVAGE, who decided to use the services offered by the SFRTA to travel from Hollywood, Florida to West Palm Beach, Florida to visit his brother by using the TRI-RAIL Train.

18. On this date he arrived at a station with no Station Agent and proceeded to attempt to use the TVM to purchase a ticket. He was unable to do so and decided to call the customer service department for assistance.

19. The customer service agent with whom he spoke told him not to worry as it was OK for him to board the train without a ticket and that when he got to the West Palm Beach Station, to locate a Station Agent who would assist him with his purchase at that time.

20. The customer service agent did not tell him to ask the onboard security person for a self addressed envelop so that he could mail in his payment after the trip, which is the published policy. He also did not tell him that he could also mail in the discounted fare to which he would be entitled as a disabled rider.

21. Relying on the incorrect advice of the customer service agent, Plaintiff BOBBY SAVAGE boarded the train and began his trip with the intention that he would pay for the ticket at the end of the trip.

22. Plaintiff BOBBY SAVAGE assumed that he would not have a problem with onboard security personnel as the onboard security agent should also be familiar with the procedure as described by the customer service agent; i.e. that it was acceptable as a disabled rider to travel on the train without a ticket and then pay at the end of the trip at the arriving station.

23. Unfortunately, what the Plaintiff did not know was that the onboard security agents and their supervisors were not trained by the Defendant to assist disable riders who could not purchase tickets from the TVMs or routinely disregarded the stated policy to discriminate against disabled riders. Instead, the Plaintiff learned that the policy and procedures of the onboard security personnel and their supervisors when confronting a disabled rider who could not produce a ticket, was to issue a "Fare Evasion Warning" on the first offense and if a second offense to have the person arrested.

24. Defendant SFRTA knowingly did not train its onboard security personnel, their supervisors or their customer service agents to follow the Defendant's own American's with Disabilities Act enunciated policies and procedures as it pertains to the treatment of blind/disabled riders on its TRI-RAIL Train when they could not purchase a ticket at a TVM.

24. In practice, Defendant SFRTA'S policies and procedures as implemented by its onboard security personnel and their supervisors was to confront the disabled, blind rider who boards the Train without a ticket and treat him/her as a criminal or "violator" for not having a ticket.

25. Defendant SFRTA'S unstated policy and procedure as implemented by its onboard security personnel and their supervisors was to issue a "FARE EVASION WARNINGS" even when the onboard security person can easily determine that the rider is a blind passenger, and even when the blind passenger explains that he was unable to purchase a ticket using the TVM at an unmanned station.

26. On April 6, 2011, after boarding the Train without a ticket on instructions of a customer service agent, the Defendant's on board security person, Tabitha World, approached the Plaintiff as he was sitting in his seat on the Train and requested to see his ticket.

27. The Plaintiff advised her that he was unable to purchase a ticket using the TVM at the station at which he boarded the train.

28. Had Tabitha World been trained to apply the Defendant's alleged policy for disabled riders without a ticket, she would have immediately provided the Plaintiff with a self-addressed envelop and advised him to pay by mail and the matter would have been resolved.

29. Defendant either intentionally or negligently failed to train Tabitha World on its published disabled rider policy because as soon as the Plaintiff advised her that he was unable to purchase a ticket using the TVM, she immediately and without hesitation pulled out a "Fare Evasion Warning" form and intentionally began the process of completing it.

30. In front of all of the passengers in this car Defendant's onboard security person began to ask the Plaintiff for personal and private information including his name, address, and other pertinent information in total contradiction to the alleged policy for the treatment of disabled riders which the Defendant uses as evidence of its alleged compliance with the American's with Disabilities Act.

31. Then, when the Plaintiff would not cooperate, Tabitha World, the onboard security

person contacted her supervisor by telephone or radio to discuss this situation of a blind rider without a ticket who was not cooperating in the issuance of a Fare Evasion Warning, the supervisor did not correct her behavior, did not explain the Defendant's policy to her, and did not instruct her to apologize and provide the Plaintiff with a self addressed envelop to mail in his payment, which is what one would expect if the Defendant intended to follow its published ADA policy.

32. Tabitha World's supervisor, when he learned of a blind rider who would not cooperate in the issuance of a Fare Evasion Warning for traveling without a ticket, instead instructed her to have the Plaintiff removed from the Train unless he signed the form as was required of a disabled violator of the Defendant's policy.

33. Tabitha World communicated her supervisor's instructions to the Plaintiff to either cooperate and sign the Fare Evasion Warning form or be removed from the Train at an interim station.

34. It is hard to imagine the horror of a blind rider who is threatened with the consequences of being removed from the Train, arrested as a criminal, and possibly stranded at an unknown station.

35. The Plaintiff was upset with the entire ordeal and believed that he was being intentionally harassed, embarrassed, and discriminated against as a disabled rider in front of a train full of sighted persons, by a designated and authorized representative of the Defendant, i.e. by Tabitha World, an onboard security agent of the Defendant, who was acting with the approval of her supervisor, and who under the color of state authority, threatened to escort the Plaintiff off of the train and have him arrested for not having a ticket.

36. Attached as Exhibit "A", is a copy of the "Fare Evasion Warning" which states: **"Signature shall only indicate that the VIOLATOR is aware of this one time warning. Failure to sign shall result in a Fare Evasion Citation being issued".**

37.  At no time did Tabitha World offer the Plaintiff a self addressed envelop which is what the enunciated policy states will be done.

38.  Per the enunciated ADA policy of the Defendant SFRTA, it does not matter how many times a blind passenger boards without a ticket, the policy is to provide a self-addressed envelop so the blind rider can pay by mail after the trip ends.

39.  However, the policy that was actually and forcibly applied to the Plaintiff was a written warning called a Fare Evasion Warning that required this disabled passenger to sign in the box labeled "SIGNATURE OF VIOLATOR" and under this box is the warning:

"SIGNATURE SHALL ONLYU INDICATE THT THE VIOLATOR IS AWARE OF THIS ONE TIME WARNING. FAILURE TO SIGN SHALL RESULT IN A FARE EVASION CITATION BEING ISSUED."

40.  Defendant SFRTA failed to properly train and supervise its customer service agents in the SFRTA's policies and procedures pertaining to blind riders who cannot access the TVMs in order to purchase a ticket to ride the TRI-RAIL Train.

41.  Defendant SFRTA failed to properly train and supervise its on board security personnel in the SFRTA's policies and procedures pertaining to blind riders who cannot access the TVMs and board the train without a ticket.

42.  Defendant SFRTA failed to properly train and supervise the supervisory personnel of the on board security person in the SFRTA's policies and procedures pertaining to blind riders who cannot access the TVMs and board the Train without a ticket.

43.  While this confrontation by the on board security agent was happening, Plaintiff BOBBY SAVAGE, had re-established telephone contact with the customer service agent and asked Tabitha World to speak with him so that she could hear that it was OK for the Plaintiff to travel with

out a ticket and that there was not need to issue a Fare Evasion Warning. She would not speak with the customer service agent. Her statement was that she listens to her supervisor, not an unknown person on a cell phone.

44. Had the employees, agents, and supervisors that were in the employ of Defendant SFRTA been trained to follow SFRTA's own published policies and procedures, then the discriminatory, embarrassing, harassing and oppressive conduct of Tabitha World and her supervisor toward the Plaintiff, BOBBY SAVAGE, would not have occurred.

45. Defendant SFRTA either intentionally or negligently failed to place adequate policies and procedures in place to insure that every employee, agent and supervisor who comes in contact with a blind person who occasionally tries to use the TRI-RAIL Train to travel in the Tri-county area from one of many stations that do not have Station Agents assigned to assist disabled riders, does not discriminate against the disabled rider in violation of the Americans with Disabilities Act.

46. A blind person, just like a sighted person, has the right to access public transportation, including access to TRI-RAIL, and should not be excluded from participation in or be denied the benefits of services, programs, or activities of SFRTA, which is a public entity, or be subjected to discrimination by the SFRTA because of such disability.

47. Defendant SFRTA intentionally or negligently failed to adequately plan for, or accommodate the blind rider who occasionally decides to use the TRI-RAIL Train to travel throughout the tri-county area and as a result the blind rider is subject to discrimination by employees and agents of the Defendant SFRTA.

48. It is foreseeable that a blind person such as Plaintiff, BOBBY SAVAGE, who on one occasion or randomly decides to ride the TRI-RAIL Train to travel from the Hollywood station to the

West Palm Beach Station, may not be able to purchase a ticket using the TVMs, and as a result may have no alternative but to board the TRI-RAIL Train without a ticket.

49. This was a traumatic event which caused injury to the Plaintiff and was totally unnecessary had the Defendant SFRTA properly trained its employees and agents and supervisors regarding its own published policies and procedures that it proudly published on its web site to satisfy its statutory obligation to the public, the National Transportation Authorities, and especially to disabled riders that they will not be discriminated against when riding TRI-RAIL, but in reality the Defendant intentionally chose not to implement its stated policy to the detriment of the Plaintiff, BOBBY SAVAGE.

50. The Defendant intentionally chose not to correct the obvious inability of some disabled riders, especially blind riders, to use the TVM machines that it spent millions of dollars installing at unmanned stations, or intentionally decided not to man stations to assist disabled riders in accessing the TVM machines.

51. Now the Plaintiff, who heretofore was an infrequent rider who appreciated the independence that was being offered to travel on his own out of county to visit his brother, has become fearful to travel on TRI-RAIL because of his inability to use the TVM to purchase a ticket.

52. The Plaintiff is fearful that he will again encounter an onboard security person who will not apply the stated policy of the Defendant to permit him to ride without a ticket to his destination and to pay later.

53. The Plaintiff is fearful that he will again encounter an untrained onboard security person who might take the same action as did Tabitha World or who may even take more drastic action knowing that there is a Fare Evasion Warning on file with the Defendant that on its face is in violation

of the Americans with Disabilities Act.

54. Alternatively, if Tabitha World and her supervisor were trained in the proper procedure for treating a blind rider who did not have a ticket, but instead intentionally chose to discriminate against the Plaintiff in violation of the American's with Disabilities Act, then the Defendant is equally liable for the discriminatory behavior of Tabitha World and her supervisor.

55. The Plaintiff retained the services of the law firm of Robert E. O'Connell, PA and Robert E. O'Connell, Esq. agrees that they are entitled to reasonable attorneys fees.

56. The Plaintiff is entitled to an award of attorneys fees against the Defendant as provided in the American's with Disabilities Act, 42 U.S.C. §12205, costs and expert witness fees.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, BOBBY SAVAGE, requests that this Court issue findings and an order as follows:

A. Award Plaintiff damages including, but not limited to compensatory damages for pain and suffering, loss of ability to ride without fear of discrimination on public transportation, mental anguish when riding public transportation, and any monetary damages as authorized by law

B. Award Plaintiff the costs of this action and a reasonable attorney's fee pursuant to 42 U.S.C. §1220.

C. Train all employees, customer service agents, and on board security personnel and their supervisors on the SFRTA policies and procedures relating to the Americans with Disabilities Act, and in particular those relating to blind riders.

D Removal from the system all Fare Evasion Warnings issued to any blind riders, including any issued to the Plaintiff.

E.  Post signs at all check-in location for Onboard Security personnel and their supervisors regarding the policy relating to blind passengers without tickets.

F.  Require that all new hires be required to acknowledge in writing the policy pertaining to blind riders.

G.  Make it easier for Blind riders and other disabled riders who can access the TVM's a to obtain a discount through the TVM.

H.  Replace the present TVM machines with a model that can be accessed by blind riders.

I.  Grant Plaintiff any other relief deemed just and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated this 30th day of June 2011.

                                            S/ *Robert E. O'Connell*
                                            ROBERT E. O'CONNELL, ESQ.
                                            Florida Bar No.: 315842
                                            ROBERT E. O'CONNELL, P.A.
                                            Email Address: reo@reo-law.com
                                            1499 W. Palmetto Park Road, Suite 416
                                            Boca Raton, Florida 33486
                                            Telephone: 561-999-3250

## SERVICE LIST

### BOBBY SAVAGE v. SFRTA of Palm Beach County, Florida
### Case No.:
### United States District Court, Southern District of Florida

| | |
|---|---|
| Robert E. O'Connell, Esquire<br>Florida Bar No.: 315842<br>Email Address:  reo@reo-law.com<br>ROBERT E. O'CONNELL, P.A.<br>1499 West Palmetto Park Road<br>Suite 416<br>Boca Raton, Florida 33431<br>Telephone:    561-999-3250<br>Facsimile:     561-999-3249<br>Attorneys for Plaintiff<br>[BOBBY SAVAGE]<br>[by electronic service] | |